IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SYLVIA GRESHAM,                              Civ. No. 08-6241-AA

          Plaintiff,                         OPINION AND ORDER

     v.

SAFEWAY, INC., a Delaware
Corporation, and Robert McDonald,

          Defendants.
_____

Kevin Lafky
Haley Percell
Lafky & Lafky
429 Court St. NE
Salem, OR 97301
     Attorneys for plaintiff

Lisa Brown
Emily Shults
Bullard Smith Jernstedt Wilson

1000 SW Broadway, Suite 1900
Portland, OR 97205
     Attorneys for defendant Safeway, Inc.

1 - OPINION AND ORDER

Peter Mersereau
Karen Vickers
Mersereau & Shannon LLP
One SW Columbia Street, Suite 1600
Portland, OR 97258-2089
     Attorneys for defendant McDonald

AIKEN, Judge:

     Plaintiff, Sylvia Gresham, filed suit against her former employer, Safeway, alleging: 1) gender discrimination in the form of disparate treatment, retaliation, and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e and Or. Rev. Stat. § 659A.030; 2) intentional infliction of emotional distress; 3) reckless infliction of emotional distress; 4) negligent retention; 5) wrongful discharge; and 6) retaliation by employer for disclosing criminal activity in violation of Or. Rev. Stat. § 659A.230. Additionally, plaintiff brings this action against Robert McDonald, her former co-worker, alleging: 1) intentional infliction of emotional distress; 2) assault; and 3) battery. As a remedy, plaintiff seeks recovery of non-economic, economic, compensatory, and punitive damages, attorney fees and costs.

     Before the court is defendant Safeway's motion for summary judgment, and defendant McDonald's motion for partial summary judgment on plaintiff's intentional infliction of emotional distress claim. The court held oral argument on Nov. 9, 2009. The case was then stayed pending a settlement conference that was ultimately unsuccessful. For the reasons below, Safeway's motion for summary judgment and McDonald's motion for partial summary judgment are granted.

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

In September 2005, plaintiff began her employment as a deli clerk for Safeway in Springfield, Oregon.  On February 17, 2006, plaintiff signed a receipt in acknowledgment of Safeway's zero tolerance policy for any harassment or discrimination in the workplace.   The policy has a reporting procedure and requires employees to immediately report any suspected harassment.

Plaintiff alleges that McDonald, a co-worker, came up from behind her and put his hands on her waist.  Plaintiff told McDonald not to touch her, and then talked to Cameron Russell, assistant store manager, who allegedly witnessed the incident and said, "don't get me involved."  Percell Decl. Ex. 1 at 9, Gresham Dep. 74:4-14.   Plaintiff did not formally report this incident, believing she could handle McDonald herself.

Following this incident, plaintiff agreed to help open a new Safeway store in Bend, Oregon from August 5, 2006 to August 13, 2006.  However, plaintiff had to bring her twelve-year old daughter to Bend due to lack of child care.  McDonald volunteered to drive her daughter and another co-worker, Samantha York, to Bend. Plaintiff alleges that during the car trip, McDonald drank beer and put his hands on the inner thigh of her daughter.  Upon arrival at the motel in Bend, York and plaintiff's daughter reported McDonald's alleged behavior to plaintiff.  This was followed by another encounter a few days later at the motel, when McDonald allegedly slapped plaintiff's daughter on the buttocks, leaving a hand print.

When plaintiff returned to Safeway in Springfield, she reported the alleged assaults on her daughter to the store manager, Sharon Hernandez, who told her the store would look into it. McDonald continued to work at the store without suspension or discipline. Plaintiff alleges that Safeway management instructed her not to report her daughter's assaults to the police.

On August 30th, plaintiff spoke with Safeway Human Resources Advisor, Lorraine ("Lorrie") Jorgensen, who was investigating complaints of excessive noise and rowdy behavior in the Bend motel where the employees stayed. During this interview, plaintiff reported the alleged incidents involving McDonald and her daughter.

On September 7th, plaintiff reported McDonald's actions to the Springfield Police Department.

On September 11th, McDonald walked by plaintiff and slapped her on the buttocks. That day, plaintiff reported this incident to Jorgensen. She also reported the earlier incident with McDonald putting his hands on her waist. According to Jorgensen's notes, plaintiff indicated that McDonald had inappropriately touched "a lot of others." Percell Decl. Ex. 9. Plaintiff allegedly told Jorgensen she "felt really uncomfortable" with McDonald working at the store. Percell Decl. Ex. 1 at 16; Gresham Dep. 106:18-22.

On September 12th, McDonald was given a ten-day suspension without pay and was moved to another store.

After plaintiff reported the incidents to the Police and Jorgensen, plaintiff alleges that Safeway management did the following: reduced plaintiff's work hours and changed her to a less

4 - OPINION AND ORDER

desirable shift; promised a deli management position, but then
chose another employee to train for the management position; told
her that she would never be management at Safeway's Springfield
store, and that she would have to transfer to another store to
advance her career.  This culminated in plaintiff walking out of
the store in the middle of her shift on October 28, 2006.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56©).  The materiality of a fact is determined by the
substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The
authenticity of a dispute is determined by whether the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond
the pleadings and identify facts which show a genuine issue for
trial.  Id. at 324.

Special rules of construction apply to evaluating summary
judgment motions: (1) all reasonable doubts as to the existence of

5 - OPINION AND ORDER

genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

I.    Safeway's Motion for Summary Judgment

A.    Gender Discrimination

Safeway moves for summary judgment, arguing that plaintiff has not proffered sufficient evidence to establish a prima facie case of discrimination under both Title VII, 42 U.S.C. § 2000e and Or. Rev. Stat. § 659A.030.    Plaintiff alleges three counts of discrimination: 1) retaliation; 2) disparate treatment; and 3) hostile work environment.

I.    Retaliation

To make out a prima facie case of retaliation, an employee must show that 1) she engaged in a protected activity; 2) her employer subjected her to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). If plaintiff proves a prima facie case, then the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the action taken. Id. If the defendant articulates a reason, then plaintiff must demonstrate that the reason was merely a pretext for a discriminatory motive. Id.

The standard under Or. Rev. Stat. § 659A.030(1)(f) is similar. A plaintiff must prove that: 1) the defendant intentionally

6 - OPINION AND ORDER

retaliated against the employee because he or she filed a discrimination complaint; 2) the defendant did so with the intent of forcing the employee to leave the employment; and 3) the employee left the employment as a result of the retaliation. Seitz v. Albina Human Resources Cent., 100 Or. App. 665, 674-75, 788 P.2d 1004 (1990).

For the first prong, plaintiff alleges that she experienced retaliation after complaining to her supervisor about McDonald sexually harassing her and her daughter. She alleges she informally reported the first instance to the assistant store manager, Cameron Russell. When this occurred is not clear from the record. Plaintiff alleges she lodged numerous complaints regarding McDonald's behavior toward her daughter upon returning from Bend, and lodged an official complaint on September 11th to Lorraine Jorgensen.

Safeway addresses only plaintiff's formal September 11th complaint, and argues that employers are not responsible under Title VII for hostile sexual acts resulting from non work-related, off-duty interactions between a worker and a non-employee.

The Ninth Circuit holds that making an informal complaint to a supervisor is a protected activity. See EEOC v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989), overruled on other grounds by Burrell v. Star Nursery, Inc., 170 F.3d 951, 955 (9th Cir. 1999). Regarding, however, McDonald's conduct toward plaintiff's daughter, Title VII and the corresponding state law does not extend to sexual harassment of non-employees. See Janal v. Aramark Servs., Inc.,

7 - OPINION AND ORDER

2000 WL 1297708, at **5-6 (D. Or. Aug. 9, 2000) (where non-employee did not have remedy against defendant); and 42 U.S.C. § 2000e-2(a)(1) (Title VII protects from unlawful employment practices both "employees" and "applicants for employment.") Therefore, only the complaints regarding McDonald's actions toward plaintiff satisfy the first element.

As for the second element, the adverse employment action, Title VII does not protect an individual from all retaliation, but from retaliation that produces an injury or harm. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Thus, an "adverse action," for purposes of a Title VII retaliation claim, requires a showing that "a reasonable employee would have found the challenged action materially adverse," i.e., that the action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" White, 548 U.S. at 68 (internal quotation omitted)). "Context matters," and whether a particular challenged action is materially adverse will depend upon the particular circumstances. Id. at 69. The "standard for judging harm must be objective. . . . It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." Id. Safeway maintains that plaintiff did not suffer an adverse employment action.

In support of her claim, plaintiff alleges the following adverse employment actions: the managers' attitude toward her changed; she was orally reprimanded for copying her work schedule, when other employees were allowed to do so; prior to her

8 - OPINION AND ORDER

complaints, she was promised a deli management position, and
following her complaints another employee was chosen to train for
the management position; she was falsely accused of having alcohol
on her breath at work; she received complaints about her work
performance and disciplined; her hours were reduced and she
received a less desirable shift. Ultimately plaintiff alleges she
was constructively discharged.

I decline to address all of the alleged adverse actions as
plaintiff fails to provide evidence showing that the reprimands
produced material consequences for her working conditions. See,
e.g., Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th
Cir. 1997) ("[B]ecause this evaluation was never used as the basis
for any action against [the plaintiff], it cannot fairly be
considered an adverse employment action."); Smart v. Ball State
Univ., 89 F.3d 437, 442 (7th Cir. 1996) (holding that a negative
evaluation alone, without any concomitant adverse effect, such as
demotion or a change of responsibilities, is not cognizable);
Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir.
1994) (noting, when concluding that no actionable retaliation was
present, that low marks on an evaluation that was not going to be
used to fire the employee were not an adverse employment action).
In addition, the record indicates these reprimands occurred prior
to any of plaintiff's complaints. Percell Decl. Ex. 1 at 21;
Gresham Dep. 138:10-139:1.

On the other hand, reduced hours, assignment to less desirable
shifts, exclusion from professional training opportunities, and

constructive discharge do meet the "materially adverse" standard, and found to be adverse employment actions. See Ray, 217 F.3d at 1244 (reduction in workload and pay); Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 869 (9th Cir. 1996) (more burdensome work schedule); White, 548 U.S. at 69 (exclusion from meetings); and Wallace v. City of San Diego, 479 F.3d 616, 625 (9th Cir. 2007) (constructive discharge).

In response to plaintiff's allegations of adverse employment action, Safeway denies that such adverse actions occurred. Regarding the allegation that Safeway reduced her hours, Safeway submitted schedules for the five weeks following plaintiff's September 11th complaint to Jorgensen, showing that in fact, plaintiff averaged more hours than three of the four other deli clerks at the store. Second Jorgensen Decl. Ex. A. Plaintiff does not dispute this, and instead relies on the one week that plaintiff's hours were less than the majority of deli clerks. Percell Decl. Ex. 12. Next, Safeway disputes that her shift changed from "opening" to "closing," a less desirable shift. Safeway contends that she was always and continued to be scheduled for a variety of shifts, including opening shift. See Second Jorgensen Decl. Ex. A (attached schedules show a variety of shifts, but do not show her schedule prior to her September 11th complaint to Jorgensen); Percell Decl. Ex. 3 at 4, Hernandez Dep. 46:17-19 ("They didn't have set shifts. They constantly were moved around."). Plaintiff fails to provide evidence to the contrary.

Finally, Safeway argues that the evidence shows that plaintiff

abandoned her job, not that she was fired or constructively discharged.    Plaintiff contends that she was constructively discharged due to her reduced hours and change in shift.  However, plaintiff's conclusory statement that she was "constructively discharged" is not supported by facts.

The issue regarding constructive discharge is whether a reasonable person in plaintiff's position would have no choice but to resign due to defendant's actions.  <u>Middleton v. City of Sherwood</u>, 621 F. Supp. 2d 1089, 1096 (D. Or. 2009) (citing <u>Penn. State Police v. Suders</u>, 542 U.S. 129, 141 (2004)).    The Ninth Circuit holds that an employee who "was not demoted, did not receive a cut in pay, was not encouraged to resign or retire, and was not disciplined" does not state a viable constructive discharge claim.  <u>Schnidrig v. Columbia Machine, Inc.</u>, 80 F.3d 1406, 1412 (9th Cir. 1996).    According to the record before the court, plaintiff was not demoted, did not receive a cut in pay, nor was she encouraged to resign.  She quit, and her deposition testimony indicates that she left out of frustration with her co-workers, not management:

> And the deli night people are supposed to have certain stuff set for the morning person, that way the morning person doesn't have to be overwhelmed on having to, you know, make all these sandwiches and they're supposed to have all those pre-made, and it wasn't being done when I was being an opener.
> . . .
> I went in there and I went to go to work like I always do and started doing what I normally do when I walk into the deli, and then noticed that the stuff that were supposed to have been done weren't again, and I just, I don't know, just lost it, I guess, and walked

out.

Brown Decl. Ex. A. 25-27.    Given this testimony, plaintiff's allegation of constructive discharge is without merit.

The only adverse employment action that stands is plaintiff's unsubstantiated testimony that she was excluded from training and thus denied the opportunity for promotion.    Safeway fails to address this allegation other than to deny that any adverse action occurred.   Plaintiff fails to offer evidence that corroborates her allegation.    For example, it would be helpful to have the deposition testimony of Jacki Timmerman, the deli merchandiser and person whose approval was necessary to take the class.   Percell Decl. Ex.3 at 2; Hernandez Dep. 13:10-16; 45:17-46:3.   Instead, plaintiff submits her own testimony that after she complained, Russell told her that she was "not going to be a deli manager, period." (Percell Decl. Ex. 1 at 18; Gresham 115:1-5; 139:2-11). Russell does not recall this conversation, and denies any decision making authority for deli management promotions, "I think that my input would not be sought.    I would not be involved in the promotion decision, the training decision, or the placement decision.   None of those things apply to assistant manager.   That whole part of the job is not . . . under my realm of authority." Percell Decl. Ex. 5 at 5-6; Russell Dep. 27:3-29:3.   Despite the unsubstantiated nature of plaintiff's testimony, her testimony may suffice to make a prima facie case under Title VII.   Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659 (9th Cir. 2002) (requiring only a minimal showing and allowing self-serving

12 - OPINION AND ORDER

testimony to substantiate a prima facie allegation).

To satisfy the third prong, this alleged exclusion from professional training must be causally linked to her formal complaint on September 11th.  A causal link may be inferred if they are close in time.  Pullom v. U.S. Bakery, 477 F. Supp. 2d 1093, 1106 (D. Or. 2007) (two months sufficiently close in time). Plaintiff testified that Russell's comment came after she complained about McDonald's actions.  As she quit on October 28, 2006, Russell's comment would have occurred shortly after she complained.  An inference may be drawn by this proximity to find the exclusion from professional training linked to the protected activity of her September 11th complaint.

As discussed above, Safeway failed to produce evidence that contests plaintiff's exclusion or shows Safeway excluded plaintiff for a legitimate non-retaliatory reason.  However, the burden of persuasion remains with the plaintiff at all times.  Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004).  Plaintiff must show that more likely than not her exclusion from professional training was a form of retaliation.  The assistant manager does not recall this conversation, and there is no other testimony that corroborates this allegation.  The Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony.  Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).  For this reason, plaintiff has failed to create a genuine issue of fact that she

experienced retaliation for complaining about McDonald's conduct.[1]

Safeway's summary judgment motion on plaintiff's retaliation claim is granted.

### ii. Disparate Treatment

Safeway maintains that plaintiff fails to show that she suffered disparate treatment by Safeway.  A person suffers disparate treatment in employment "when he or she is singled out and treated less favorably than others similarly situated on account of [gender]." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004).  Disparate treatment claims require the plaintiff to prove that the employer acted with conscious intent to discriminate. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805-06 (1973).  Plaintiff may prove this in one of two ways. Plaintiff may produce evidence allowing an inference of conscious intent to discriminate, in the form of the McDonnell Douglas prima facie case, or other sufficient evidence, direct or circumstantial, of discriminatory intent. Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002).  I will apply the McDonnell Douglas burden shifting analysis, as plaintiff does not offer direct or circumstantial evidence that shows a discriminatory intent.

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination.  To establish a

_____

[1] I do not address the Ellerth/Faragher affirmative defense that Safeway argues applies to plaintiff's retaliation claim. The case Safeway cites, Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 184 (9th Cir. 2005), applies this defense to the plaintiff's hostile work claim, and not to plaintiff's retaliation claim.

prima facie case of gender discrimination under federal and Oregon law, plaintiff must show that: 1) she is a member of a protected class; 2) she performed her job satisfactorily; 3) she was subjected to an adverse employment action; and 4) she was treated differently from similarly situated individuals outside of her protected class, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Bodett, 366 F.3d at 744; Henderson v. Jantzen, 79 Or. App. 654, 658, 719 P2d. 1322 (1986) (adopting the federal standard for a prima facie case set forth in McDonnell Douglas). By establishing a prima facie case, the plaintiff creates a presumption of discrimination.

Plaintiff is part of a protected class. However, Safeway contends that plaintiff did not suffer an adverse employment action. For a disparate treatment claim, as opposed to a retaliation claim, an adverse employment action "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). The Ninth Circuit holds that assigning more, or more burdensome work responsibilities, is an adverse employment action. Although plaintiff alleges actions that would be considered a materially adverse change in terms or conditions, i.e. a reduction in hours or a change in schedule, she offers no evidence in support of this allegation. Safeway submitted schedules dated after her September 11th complaint that show she was assigned a variety of shifts and scheduled for more hours than the majority of her co-

15 - OPINION AND ORDER

workers.  Second Decl. Jorgensen, Ex. A.  Safeway also relies on plaintiff's testimony where plaintiff complains that she was "hit with" too many hours.  Brown Decl., Ex. A at 25; Gresham Dep. 116:4-5.  Plaintiff does not provide any evidence, other than her testimony, supporting a materially adverse change in the terms or conditions of her employment.

Plaintiff's testimony may suffice to show an adverse employment action, however plaintiff does not argue or show that she was treated differently or less favorably than similarly situated male employees.  Instead, plaintiff cites to <u>Kortan v. Cal. Youth Authority</u>, 217 F.3d 1104 (9th Cir. 2002) (<u>following</u> [sic] <u>McDonnell Douglas</u>, 411 U.S. at 802), to assert that she has the option to show that she was subjected to an adverse employment action <u>or</u> show she was treated less favorably than similarly situated male employees.  However, <u>Kortan</u> has not been followed, <u>Navarette v. Nike, Inc.</u>, 2007 WL 2890976, at *5 n.4 (D. Or. Sept. 28, 2007), and the rule articulated in <u>McDonnell Douglas</u> clearly requires both.

Plaintiff fails to show she experienced a materially adverse change in her terms or conditions of employment and that she was treated differently than similarly situated individuals outside of her protected class, therefore plaintiff fails to state a prima facie case of disparate treatment under Title VII.  Safeway's summary judgment motion is granted on that claim.

### iii. Hostile Work Environment

To prevail on a claim for "hostile work environment" sexual

16 - OPINION AND ORDER

harassment under Title VII, plaintiff must show that 1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 2) that this conduct was unwelcome; and 3) that it was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment. Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991).

The analysis under Oregon law is substantially the same. See Fred Meyer, Inc. v. Bureau of Labor & Indus., 152 Or. App. 302, 307, 954 P.2d 804 (1998), where the third element reads "intimidating, hostile, or offensive working environment," but this has been interpreted to require harassment that is "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." Id. (citations omitted).

Safeway argues that plaintiff's hostile work environment claim fails because she cannot establish that the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment.

To satisfy this requirement, plaintiff must prove that her workplace was both objectively and subjectively offensive. Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995). The objective measure of an abusive working environment is determined by what a reasonable woman would consider abusive. Ellison, 924 F.2d at 879-80. The court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

17 - OPINION AND ORDER

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "[N]o single factor is required," id., and "[t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001) (internal quotation marks and citation omitted).

Under federal and state law, a plaintiff may state a case for a hostile work environment against an employer for a co-worker's harassment under a theory of negligence. Id. at 875; Haskins v. Owens-Corning Fiberglass Corp., 811 F. Supp. 534, 537 (D. Or. 1992) (citing Seitz, 100 Or. App. at 673). Employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known. Hacienda, 881 F.2d at 1515-16; Or. Admin. R. 839-007-0550(5). The employer's remedy must be effective and reasonably calculated to end the harassment. Ellison, 924 F.2d at 882. The failure to react promptly to a complaint, or to reprimand the harasser strongly, is evidence relevant to determine whether the employer took sufficient remedial action. Mockler v. Multnomah County, 140 F.3d 808, 813 (9th Cir. 1998).

In support of her claim, plaintiff provides evidence that McDonald touched her daughter while driving her from Springfield to Bend, slapped her daughter on the buttocks while at the hotel in Bend, described her daughter's fear of entering the store, alleges

18 - OPINION AND ORDER

that McDonald inappropriately touched co-worker Samantha York as well as plaintiff, and that McDonald slapped plaintiff on the buttocks.

Safeway maintains that the allegations involving her daughter are irrelevant, because they did not occur in the workplace or involve a Safeway employee. Safeway argues that the two remaining incidents by McDonald were not sufficient to create an objectively hostile work environment. Additionally, Safeway argues that plaintiff did not subjectively think her work environment was hostile. Safeway relies on the following testimony by plaintiff:

> Q:  Did you ever feel like your work environment was what you would consider a hostile work environment while you were at Safeway?
> A:  It wasn't in the beginning, it was great, you know, I was doing what I like doing, you know, being around people and I'm good at it so - but things did change after everything that was happening.
> Q:  Tell me how it changed and how you felt it was hostile.
> A:  Well I don't know about hostile, but . . . all of a sudden there's problems, and I just felt like I was looked at like, I don't know, differently.

Brown Decl. Ex. A at 30-31.

Plaintiff relies on *Ellison*, *supra*, to argue that she presented sufficient evidence from which a reasonable trier of fact could conclude that plaintiff was subjected to a hostile work environment. However, *Ellison* does not support plaintiff's claim.

In *Ellison*, the plaintiff was subjected to several invitations to lunch by a co-worker who worked in close proximity to her. Following her refusal, the co-worker sent her two bizarre love letters containing delusional ideas about the two of them being in

19 - OPINION AND ORDER

a relationship. Plaintiff reported this to her manager, and the co-worker was immediately transferred to another office. Six months later, he secured a transfer back to plaintiff's office, and wrote her another letter, seeking joint counseling for the two of them. Upon learning of his impending return, plaintiff became frightened and upset, and requested a transfer for either her or him. Ellison, 924 F.2d at 874. The court held that his impending return created a hostile work environment for plaintiff, and emphasized plaintiff's reasonably frantic response to his impending return. Id. at 880.

Here, plaintiff did not face such a situation. Although plaintiff argues that Safeway should have responded to her complaints about McDonald's behavior toward her daughter, under Title VII, this expectation for protection of non-employees is misplaced. Janal, 2000 WL 1297708, at **5-6. Furthermore, as soon as plaintiff complained about McDonald's actions toward herself, McDonald was transferred. Safeway therefore cannot be held liable for creating a hostile work environment under Title VII or Or. Rev. Stat. § 659A.030. Safeways's summary judgment motion on plaintiff's claim for hostile work environment is granted.

### B.  Intentional Infliction of Emotional Distress ("IIED")

Next, Safeway moves for summary judgment on plaintiff's state law claim of intentional infliction of emotional distress. Safeway argues that there is no evidence of outrageous conduct by Safeway to substantiate a direct claim of IIED against it. Alternatively, Safeway argues that McDonald was not acting within the scope of

20 - OPINION AND ORDER

employment when he allegedly harassed plaintiff, and therefore Safeway cannot be held vicariously liable.

A claim for IIED requires that: 1) defendant intended to inflict severe emotional distress; 2) defendant's conduct did, in fact, cause plaintiff to suffer severe emotional distress; and 3) defendant's conduct involved an extraordinary transgression of the bounds of socially tolerable behavior. McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).

Plaintiff argues that Safeway's failure to respond to plaintiff's complaints regarding her daughter; Safeway's alleged instruction to not report McDonald's behavior to the police; and Safeway's alleged retaliation is sufficiently outrageous to state a claim for IIED. I disagree. Under Oregon law, the principle that employer's mere nonresponsiveness to claims of workplace harassment is insufficient to support direct liability for IIED is established. Wheeler v. Marathon Printing, Inc., 157 Or. App. 290, 308, 974 P.2d 207 (1998). The standard for outrageousness is set high, it must be "outrageous in the extreme." Hetfeld v. Bostwick, 136 Or. App. 305, 308, 901 P.2d 986 (1995), rev. den., 322 Or. 360, 907 P.2d 247 (1995). Thus, I find that Safeway is not directly liable for IIED.

To hold Safeway vicariously liable for McDonald's alleged acts, plaintiff must show that the employee's act were within the course and scope of employment. Chesterman v. Barmon, 305 Or. 439, 442, 753 P.2d 404 (1988). To conclude that the employee was acting within the course and scope of employment: 1) the act must have

21 - OPINION AND ORDER

occurred substantially within the time and space limits authorized
by the employment; 2) the employee was at least partially motivated
by a purpose to serve the employer; and 3) the act is of the kind
which the employee was hired to perform.  Minnis v. Oregon Mut.
Ins. Co., 334 Or. 191, 201, 48 P.3d 137 (2002) (internal citation
omitted).

Here, plaintiff meets the first requirement, because
McDonald's alleged conduct occurred at work.[2]  However, I do not
find that the "employee engaged in conduct that was intended to
serve the employer and that conduct resulted in the acts that
injured the plaintiff."  Vinsonhaler v. Quantum Residential Corp.,
189 Or. App. 1, 6, 73 P.3d 930 (2003).  Plaintiff makes no attempt
to argue that McDonald's conduct was done in the service of his
employer, and Oregon courts have held "that workplace sexual
harassment that results in IIED and battery is motivated by purely
'personal' desires that are unrelated to serving one's employer."
Ballinger v. Klamath Pac. Corp., 135 Or. App. 438, 456, 898 P.2d
232 (1995) (citing Carr v. US W. Direct Co., 98 Or. App. 30, 36,
779 P.2d 154, rev. den., 308 Or. 608, 784 P.2d 1101 (1989).  As
such, plaintiff's claim against Safeway for IIED fails.

C.    Reckless Infliction of Emotional Distress ("RIED")

Safeway argues that summary judgment should be granted on

---

[2]I do not include McDonald's actions against plaintiff's
daughter.  Plaintiff asks that this harm to a third party be
imputed to plaintiff.  However, Oregon law has yet to recognize
an infliction of emotional distress for harm to a third party.
See Checkley v. Boyd, 170 Or. App. 721, 799, 14 P.3d 81 (2000).

plaintiff's IIED claim because Oregon law explicitly rejects claims of IIED in the context of an employer-employee dispute. I agree. See McGanty, 321 Or. at 548 (the relationship between an employer and employee is not sufficient to establish a claim for IIED); Snead v. Metro. Prop. & Cas. Ins. Co., 909 F. Supp. 775, 778-79 (D. Or. 1996) (recognizing that Oregon law does not permit a IIED claim in an employment dispute). Therefore, summary judgment is granted as to plaintiff's IIED claim.

    D.    Negligent Retention

    Next, Safeway argues that plaintiff fails to prove that Safeway negligently retained McDonald. To prove a claim for negligent retention, plaintiff must present evidence that Safeway knew or should have known that McDonald had a history of harassment. Hansen v. Cohen, 203 Or. 157, 160, 278 P.2d 898 (1955). In Chesterman v. Barmon, the court stated:

> Liability is for negligently placing an employee with known dangerous propensities, or dangerous propensities which could have been discovered by a reasonable investigation, in a position where it is foreseeable that he could injure the plaintiff in the course of the work. The duty to use reasonable care in hiring or retaining employees arises because it is foreseeable that the employee, in carrying out his employment, may pose an unreasonable risk of injury to others.

82 Or. App. 1, 4, 727 P.2d 130 (1986) (citing Cain v. Rijken, 300 Or. 706, 714-15, 717 P.2d 140 (1986)).

    Here, Safeway maintains that McDonald worked for Safeway for twelve years with no history of complaints about inappropriate conduct, and that they could not have reasonably foreseen

23 - OPINION AND ORDER

McDonald's conduct on September 11, 2006.    In response, plaintiff asserts that Safeway was negligent for retaining McDonald after plaintiff complained to Russell about McDonald putting his hands around her waist.    Plaintiff argues that Russell had a duty as a manger to investigate the incident and take appropriate action, instead of telling her not to get him involved. Percell Decl., Ex. 1 at 9; Gresham Dep. 74:4-14.    Even if Safeway is not found to be aware of McDonald's alleged inappropriate conduct until August 30, 2006, plaintiff argues that Safeway had a duty to remove McDonald from working in the same location with plaintiff.    Furthermore, plaintiff argues that it was reasonably foreseeable, given McDonald's conduct with her daughter and plaintiff, that McDonald would slap plaintiff's butt on September 11, 2006.

Safeway does not address plaintiff's alleged complaint to Russell regarding the alleged first incident with McDonald inappropriately touching plaintiff.    Instead,   Safeway contends that plaintiff's description of interactions between her daughter and McDonald is inadmissible hearsay.    Safeway also points to inconsistencies in plaintiff's deposition, to argue that plaintiff has failed to create an issue of fact.   Gibson v. Pac. Summa Cap., Inc., 163 Or. App. 321, 326, 987 P.2d 1240 (1999), rev. den., 329 Or.589, 994 P.2d 130 (2000).   If there is inconsistency, it is only with respect to the date of the first incident.   Russell in his deposition did not deny that this incident occurred, instead he did not "recall seeing [McDonald] doing anything that [he] would consider inappropriate."   Percell Decl. Ex. 5 at 4; Russll Dep.

24 - OPINION AND ORDER

19:4-5. Safeway contends that it acted promptly to remove McDonald from the workplace on September 11, 2006 following plaintiff's complaint on August 30, 2006.

Plaintiff's uncontroverted testimony that this earlier incident occurred, and that Russell, the assistant store manager, did not investigate her claim is sufficient to create a genuine issue of fact. As such, plaintiff's claim for negligent retention survives summary judgment.

E.  Wrongful Discharge

Safeway moves for summary judgment on plaintiff's wrongful discharge claim. Arguments presented in this section replicate the arguments presented against plaintiff's retaliation claim. Under Oregon law, plaintiff's common law wrongful discharge claim is precluded by a statutory claim providing an adequate remedy. Whitley v. City of Portland, 2009 WL 2485773, at **26-27 (D. Or. Aug. 13, 2009); Kallio v. Columbia County Dept. of Roads, 2009 WL 103565, at *6 (D. Or. Jan. 13, 2009) (citing Anderson v. Evergreen Int'l Airlines, Inc., 131 Or. App. 726, 734, 886 P.2d 1068 (1994)). In Whitley, the court found that the statutory remedy for a sexual harassment claim, Or. Rev. Stat. § 659A.885, provided an adequate remedy for a common law wrongful discharge claim. The same can be applied here, and plaintiff's common law wrongful discharge claim is dismissed.

F.  Retaliation For Disclosing Criminal Activity in Violation of Or. Rev. Stat. § 659A.230

Finally, Safeway argues that plaintiff fails to show Safeway

retaliated against her for disclosing criminal activity. In discussing an alleged violation of Or. Rev. Stat. § 659A.030, the court in <u>Darbut v. Three Cities Research, Inc.</u>, followed the framework for a federal retaliation claim brought under Title VII, and set forth the following elements:

> (1) he or she was engaging in a protected activity (i.e., made a protected disclosure), (2) he or she suffered an adverse employment decision, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment decision suffered.
>
> The plaintiff must also show that the protected activity was the "likely reason" for the adverse employment action.

2007 WL 496353, at *2-3 (D. Or. Feb. 12, 2007) (not reported).

Plaintiff alleges that her reports to Safeway and the police constitute protected activity. As discussed above, plaintiff relies on her own self-serving uncorroborated testimony to show that she suffered an adverse employment action. This fails create a genuine issue of fact as to an adverse employment action. Therefore, summary judgment is granted on this claim.

II. <u>McDonald's Motion for Partial Summary Judgment</u>

   <u>Intentional Infliction of Emotional Distress ("IIED")</u>

McDonald moves for partial summary judgment on plaintiff's IIED claim.

Plaintiff alleges that McDonald inappropriately touched her daughter on two occasions and inappropriately touched plaintiff on two occasions. Plaintiff argues that the fact that McDonald was aware that plaintiff had complained about him touching her daughter

26 - OPINION AND ORDER

and drinking and driving does not support his assertion that he was later "joking" around with plaintiff.  McDonald argues that his alleged actions outside of plaintiff's presence cannot establish the necessary intent element to support this claim.  I agree, and therefore will only address McDonald's actions toward plaintiff.

The intent element is met if the actor intends to inflict severe emotional distress or knows that emotional distress is certain or substantially certain to result from the actor's conduct.  McGanty, 321 Or. at 550.  McDonald maintains that there is no evidence in the record that he intended to cause plaintiff severe emotional distress.  In response, plaintiff argues McDonald's intent remains an issue of fact.  I agree.

Next, McDonald argues that his alleged conduct does not rise to the degree of outrageousness required for an IIED claim.  The Oregon courts have declared that the conduct must be "outrageous in the extreme."  Hetfeld, 136 Or. App. at 308.  For example:

> The invitation to a woman to illicit intercourse, insufficient in itself [to be actionable], becomes extreme outrage when it is prolonged and repeated to the point of hounding, and accompanied by advertising in the form of indecent pictures or exposure.

Harris v. Pameco Corp., 170 Or. App. 164, 171-72, 12 P.3d 524 (2000) (internal quotation omitted).  Although unwanted and entirely inappropriate, I do not find that McDonald's alleged conduct was prolonged or repeated enough to be characterized as hounding.  Therefore, I find McDonald's conduct did not rise to the level of extreme outrageousness, and thus his conduct is not actionable.  Therefore, McDonald's motion for partial summary

27 - OPINION AND ORDER

judgment on plaintiff's IIED claim is granted.

## CONCLUSION

For the reasons set forth above, Safeway's motion for summary judgment (doc. 42) is granted as to all claims except plaintiff's negligent retention claim, which is denied. McDonald's motion for partial summary judgment (doc. 40) is granted. Safeway's motion to strike (doc. 77) and McDonald's motion to strike (doc. 73.) are denied.

Under 28 U.S.C. § 1367(a), the court has discretion to keep a state law claim if no federal claim remains. Under 28 U.S.C. § 1367(c), a federal district court may decline to exercise this supplemental jurisdiction if the claim raises novel or complex issues of state law, the state-law claim predominates over the claim or claims over which the court had original jurisdiction, the court has dismissed claims over which it had original jurisdiction, or if there are other compelling reasons for declining jurisdiction. Tigard Elec., Inc. v. Nat'l Elec. Contractors Ass'n, 790 F. Supp. 1498, 1504 (D. Or. 1992). I decline to exercise jurisdiction in this case, on the grounds that only a state-law claim remains, and it would be more appropriately resolved in state court.

IT IS SO ORDERED.

Dated this ___2___ day of ~~January~~ *February* 2010.

Ann Aiken
United States District Judge

29 - OPINION AND ORDER